

# SUPREME COURT OF ARKANSAS

**No.** CR-13-497

BRIAN TAYLOR JORDAN
    APPELLANT

v.

STATE OF ARKANSAS
    APPELLEE

**Opinion Delivered** November 14, 2013

PRO SE MOTION FOR EXTENSION OF TIME TO FILE BRIEF [BENTON COUNTY CIRCUIT COURT, 04CR-10-1004, HON. BRAD KARREN, JUDGE]

APPEAL DISMISSED; MOTION MOOT.

**PER CURIAM**

In 2011, appellant Brian Taylor Jordan was found guilty of rape and sentenced as a habitual offender to life imprisonment. On appeal, appellant did not challenge the sufficiency of the evidence. Instead, he argued that the trial court erred in allowing prior offenses into evidence and that he was entitled to a new trial due to the trial court's bias against him. This court affirmed. *Jordan v. State*, 2012 Ark. 277, ___ S.W.3d ___. The mandate issued on August 14, 2012.

Prior to issuance of the mandate, appellant filed in the trial court a pro se petition for relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2011), alleging that he had not been afforded effective assistance of counsel. In accordance with Arkansas Rule of Criminal Procedure 37.2(c)(ii), the trial court treated the petition as filed on the day after the mandate issued. Thereafter, the State filed its response to the petition. In a written order, the trial court found that documents in support of the allegations submitted by appellant directly to the trial judge's office would be reviewed by the court and directed that the documents be filed as an

SLIP OPINION

attachment to the order. In the same order, the trial court granted leave to appellant to file an amended petition for the sole purpose of setting out the relevance of each submitted document to the claims raised in the petition. Subsequently, appellant filed the amended petition, and the State filed its response. On February 5, 2013, the trial court denied the petition without a hearing.[1] Appellant timely lodged this appeal. Now before us is appellant's motion for extension of time to file his brief.

We need not consider the merits of the motion for extension of time because it is clear from the record that appellant could not prevail if an appeal were permitted to go forward. An appeal from an order that denied a petition for postconviction relief will not be allowed to proceed where it is clear that the appellant could not prevail. *Holliday v. State*, 2013 Ark. 47 (per curiam); *Bates v. State*, 2012 Ark. 394 (per curiam); *Martin v. State*, 2012 Ark. 312 (per curiam). Accordingly, the appeal is dismissed, and the motion is moot.

A review of the petitions and the order reveals no error in the trial court's decision to deny relief. When considering an appeal from a trial court's denial of a Rule 37.1 petition based on ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland*

---

[1]Arkansas Rule of Criminal Procedure 37.3(c) provides that an evidentiary hearing should be held in postconviction proceedings unless the files and record of the case conclusively show that the prisoner is entitled to no relief. *Eason v. State*, 2011 Ark. 352 (per curiam); *Hayes v. State*, 2011 Ark. 327, 383 S.W.3d 824 (per curiam). Where the circuit court dismisses a Rule 37.1 petition without an evidentiary hearing, it "shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings." Ark. R. Crim. P. 37.3(a); *see Eason*, 2011 Ark. 352. In the instant case, the circuit court's order denying postconviction relief complies with the requirements of Rule 37.3.

SLIP OPINION

*v. Washington*, 466 U.S. 668 (1984), the trial court clearly erred in holding that counsel's performance was not ineffective. *Taylor v. State*, 2013 Ark. 146, ___ S.W.3d ___.

The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland,* we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). There is a strong presumption that trial counsel's conduct falls within the wide range of professional assistance, and an appellant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55; *McCraney v. State*, 2010 Ark. 96, 360 S.W.3d 144 (per curiam). Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Holloway v. State*, 2013 Ark. 140, ___ S.W.3d ___. A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard*

3

SLIP OPINION

*v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to possible prejudice in sentencing. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In his petitions, appellant argued that counsel did not provide effective assistance based on the failure to introduce certain evidence and raise arguments related to the evidence to support his defense that the victim had offered him money in exchange for sex. The evidence and related arguments advocated by appellant consisted of allegedly false statements by investigators in a police report with regard to the May 27, 2010 interview of Cleo Horton; claims of police intimidation of Mr. Horton during his May 27, 2010 interview, resulting in the recanting of his statement that the victim had offered him money in exchange for sex on several occasions; a letter allegedly written by Mr. Horton in September 2010 in which Mr. Horton confessed to being untruthful in May 2010 when he recanted his statement, along with the explanation that he lied to cover up his participation in robbing the victim on the same night as the rape and because he was promised probation; grievances in which appellant complained of police assaulting him in an attempt to force him to confess to committing the rape and to writing the Horton letter; and an email sent by the victim that appellant claimed evidenced the family



relationship between an investigator and the victim. We find no merit to appellant's arguments.

The documents submitted by appellant in support of his petitions included an "Affidavit of Probable Cause to Obtain an Arrest Warrant" in which Investigator Kenneth Paul of the Benton County Sheriff's Office attested that, on February 27, 2010, the sheriff's office began an investigation into the rape of a seventy-five-year-old victim that led to the arrest of appellant. Investigator Paul further attested that on May 28, 2010, appellant, while an inmate in the Benton County jail, gave investigators the name of Cleo Horton, who was also an inmate in the jail, as a witness to the victim offering money in exchange for sex. During the interview, Mr. Horton told Investigator Paul that appellant was his cousin and that the victim had offered him $375 in exchange for sex on three or four occasions. According to the affidavit, Investigator Paul continued the interview and then turned off the audio recording in preparation of taking Mr. Horton back to jail. After determining that Mr. Horton's narrative was strikingly similar to appellant's statement, Investigator Paul told Mr. Horton that he would be charged if it was determined that he was being untruthful and that this was his opportunity to tell the truth. According to Investigator Paul, Mr. Horton then stated that he made up the story because appellant told him that if he could get appellant out of jail, appellant would post his bond. Mr. Horton stated that appellant had told him that the victim had never offered sex to anyone, and he apologized for lying. According to the affidavit, Mr. Horton stated that appellant asked him to lie "to try to cover up what he did." Appellant also included several incident reports prepared by the sheriff's office in the documents submitted in support of his petitions. One report referred to a September 2010 letter received by the prosecuting attorney's office allegedly written

SLIP OPINION

by Mr. Horton. The letter stated that Mr. Horton lied when he recanted his statement in the May interview in order to cover up his participation in the robbery of the victim and because he was promised probation by Investigator Paul. In the letter, Mr. Horton's name was spelled incorrectly. Investigators then interviewed Mr. Horton, who stated that he did not write the letter. Appellant also included two affidavits, dated August 24 and 25, 2011, and allegedly prepared by Mr. Horton. In one affidavit, the affiant stated that investigators coerced him into recanting his statement in May that the victim had offered him money in exchange for sex. In a second affdavit, the affiant stated that investigators coerced him into denying that he wrote the September letter. Finally, the documents included an email sent by the victim as well as grievances submitted by appellant in which he stated that he had been attacked by a member of law enforcement while he was in jail.

Because the evidence supporting appellant's claims related to Mr. Horton and alleged police misconduct was tenuous, at best, counsel made a strategic decision not to introduce the evidence or raise related arguments. Where a decision by counsel was a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then counsel's decision is not a basis for relief under Rule 37.1. *Bryant v. State*, 2013 Ark. 305, ___ S.W.3d ___ (per curiam); *Adams v. State*, 2013 Ark. 174, ___ S.W.3d ___. Counsel is allowed great leeway in making strategic and tactical decisions. *Leak v. State*, 2011 Ark. 353 (per curiam). Additionally, appellant's claim of a family relationship between an investigator and the victim could not have been considered as it was conclusory. The referenced email does not support the allegation of a family relationship, and appellant did not state how the two individuals were

related or what effect such relationship had on the outcome of the case. Neither conclusory statements nor allegations without factual substantiation are sufficient to overcome the presumption that counsel was effective, nor do they warrant granting postconviction relief. *Wedgeworth v. State*, 2013 Ark. 119 (per curiam); *Crain v. State*, 2012 Ark. 412 (per curiam).

In addition, appellant did not show that any failure to introduce the aforementioned evidence or raise related arguments was so prejudicial that it tainted appellant's trial to the degree that the proceeding was unfair. On February 27, 2010, the Benton County Sheriff's Department responded to a call that a seventy-five-year-old female had been sexually assaulted in her home. The victim identified her attacker as appellant, a former neighbor who had recently begun visiting her. *Jordan*, 2012 Ark. 277, ___ S.W.3d ___. Appellant's defense was that he did not rape the victim, rather that she offered him $100 to have sex with her. *Id.* During his direct examination, appellant admitted that he had four prior felony convictions—arson, terroristic threatening, first-degree carnal abuse, and failure to register as a sex offender. *Id.* Other evidence at trial included the testimony of the nurse who examined the victim for sexual assault, who testified that the victim sustained injuries beyond the labia majora and that penetration must have occurred to sustain such injuries. Finally, the DNA analyst with the State Crime Lab who performed the DNA testing testified that DNA recovered from a swab of the victim's right breast was consistent with DNA from the saliva sample from appellant. The jury determines, not merely the credibility of witnesses, but the weight and value of their testimony. *Nelson v. State*, 344 Ark. 407, 39 S.W.3d 791 (2001). In light of the overwhelming evidence of guilt presented at trial, appellant did not carry his burden to show that the outcome of his trial would

have been different if the evidence that he advocated had been introduced.

In a related argument, appellant contended that counsel was deficient in not providing him with a copy of statements taken by investigators or a copy of the September 2010 letter allegedly written by Mr. Horton. Appellant further contended that counsel was ineffective in refusing to investigate the authorship of the letter. He argued that if the letter had been provided to him, he could have then introduced it into evidence and, thereby, been found not guilty of rape. As held herein, counsel made a strategic decision outside the purview of Rule 37.1 not to pursue introduction of the September 2010 letter, and appellant did not meet his burden of proving that the outcome of the trial would have been different if the letter had been introduced. Likewise, even if the allegation is true, appellant failed to show that the outcome of the trial would have been different if he had been provided with a copy of statements taken by investigators.

Several of appellant's claims of ineffective assistance stem from allegations that counsel failed to effectively cross-examine the rape victim. Specifically, he alleged that counsel was deficient in not questioning the victim regarding allegedly conflicting statements, in refusing to ask the victim whether the injuries evidencing penetration of the labia majora could have been caused by masturbation or other events, and in refusing to question the victim as to whether she offered to pay appellant in exchange for sex on the night before the rape. The manner of questioning a witness is by and large a very subjective issue about which different attorneys could have many different approaches. *Clarks v. State*, 2011 Ark. 296 (per curiam). Those decisions are a matter of professional judgment, and matters of trial tactics and strategy are not

grounds for postconviction relief on the basis of ineffective assistance of counsel, even if a decision proves unwise. *Clarks*, 2011 Ark. 296; *Leak*, 2011 Ark. 353. Here, counsel's decision not to impeach the rape victim or ask potentially inflammatory questions was a matter of trial tactics and outside the purview of Rule 37.1.

Appellant also argued that counsel was deficient in failing to object to the introduction of a photograph of the crime scene, the victim's bedroom, that "focused" on a picture of a Bible in the room. Appellant argued that the photograph served no purpose except to inflame the jury because the picture was not taken on the night of the rape. In order to demonstrate prejudice for a failure to object, appellant must submit facts to support the proposition that counsel could have raised a specific, meritorious argument and that failing to raise that specific argument would not have been a decision supported by reasonable professional judgment. *Simmons v. State*, 2012 Ark. 58 (per curiam). Appellant did not identify any meritorious argument that counsel might have made to have to prevent the introduction of the photograph of the crime scene.

Appellant contended that counsel was ineffective in not objecting when the State cross-examined him regarding the details of his prior convictions. Prior to trial, appellant filed a motion in limine seeking to prevent the introduction of his prior felonies. *Jordan*, 2012 Ark. 277, ___ S.W.3d ___. The trial court found that the State would be allowed to impeach appellant's credibility with his prior convictions if he chose to testify at trial. *Id.* Against the advice of counsel, appellant chose to testify in his own defense at trial. During direct examination, appellant admitted that he had four prior felony convictions. *Id.* According to the record, appellant testified as to the details of the crimes in an attempt to minimize his culpability in each

crime. In response to appellant's efforts to reduce the severity of the crimes, the State, on cross-examination, questioned appellant regarding details of the specific nature of the crimes without objection from counsel. On appeal, we held that the trial court did not abuse its discretion in finding that the prior convictions were more probative than prejudicial and, thus, admissible pursuant to Arkansas Rule of Evidence 609 (2011). We did not reach the issue of whether the trial court erred in allowing the State to elicit specific information about the nature of the offenses because the issue was raised for the first time on appeal. *Jordan*, 2012 Ark. 277, ___ S.W.3d ___.

While appellant argued that counsel was deficient in not objecting to cross-examination regarding the details of his prior convictions, the testimony regarding the prior convictions was initiated by the appellant on direct examination, in an apparent attempt by counsel to minimize the effect of the prior convictions. His testimony went beyond merely admitting to prior crimes. The State's questioning of appellant regarding these prior convictions was in direct response to appellant's testimony on direct examination. Where a defendant, himself, initiates discussion of a certain subject, he opens the door to a line of questioning by the State. *Williams v. State*, 304 Ark. 218, 800 S.W.2d 713 (1990); *see also Gilliland v. State*, 2012 Ark. 175, at 4 ("An appellant suffers no prejudice from the admission of the testimony where he or she opens the door to the line of questioning.").[2] Accordingly, appellant failed to state a basis for a meritorious objection.

---

[2]Appellant cited *Burnett v. Fowler*, 315 Ark. 646, 869 S.W.2d 694 (1994) in support of the argument that his testimony on direct examination with regard to his prior convictions did not open the door to the line of questioning by the State. However, in *Burnett*, the issue was whether a party whose motion in limine had been overruled could be the first to broach the subject of the motion without waiving the error.



Counsel cannot be ineffective for failing to make an objection or argument that is without merit. *Sandoval-Vega v. State*, 2011 Ark. 393, 384 S.W.3d 508.

Appellant next claimed that counsel was ineffective for not raising the allegation that the prosecuting attorney gave a letter allegedly written by appellant to appellant's mother in an apparent attempt to persuade her not to testify on behalf of the defense. With the submitted documents, appellant included an affidavit of his mother stating that the prosecuting attorney gave her the letter, but he did not include a copy of the alleged letter. He contended that if counsel had informed the court of the prosecuting attorney's actions, the court could have investigated the matter to see if other witnesses had been approached by the prosecution. He also argued that the information would have raised doubt as to his guilt. Even if the allegation were true, appellant did not raise any meritorious argument that the letter had any effect on the outcome of his case as is necessary to obtain relief pursuant to Rule 37.1. In fact, he admitted in his petition that his mother testified on behalf of the defense that he was at her home at the time of the rape. Accordingly, appellant was not entitled to relief on the claim.

Finally, appellant alleged that when the jury began its deliberations following the guilt phase of the trial, counsel directed his four family members to go home and told them that she would contact them to let them know the outcome of the trial. In his documents submitted in support of his petition, appellant attached an affidavit of his mother attesting to the same. According to appellant, after the jury verdict of guilty was read, he asked counsel about his family members because he had intended for them to testify as character witnesses during the penalty phase of the trial. Appellant stated that counsel informed him that his family had to

leave because his father was not feeling well. During the penalty phase, counsel did not call mitigating witnesses. In closing argument, counsel stated that appellant would like the jury to keep in mind that he has a family and his parents are elderly and that he feels like they need him at home to help them in their older years. Even if the allegations are true, appellant has failed to state a claim for relief.

We recognize that an attorney can be ineffective for failing to present mitigating evidence. *State v. Smith*, 368 Ark. 620, 249 S.W.3d 119 (2007). However, when a petitioner under the Rule asserts that his attorney was ineffective for failure to call a witness or witnesses, it is incumbent on the petitioner to name the witness, provide a summary of that witness's testimony, and establish that the testimony would have been admissible. *James v. State*, 2013 Ark. 290 (per curiam). Because appellant failed to provide a summary of the witness's testimony or establish that the testimony would have been admissible, the allegation was conclusory and did not merit further consideration. *See id.* A conclusory claim is not a ground for postconviction relief. *Glaze v. State*, 2013 Ark. 141 (per curiam). The burden is entirely on the petitioner in a Rule 37.1 proceeding to provide facts that affirmatively support the claims of prejudice. *Thacker v. State*, 2012 Ark. 205 (per curiam); *Jones v. State*, 2011 Ark. 523 (per curiam); *Payton v. State*, 2011 Ark. 217 (per curiam). Conclusory statements without factual substantiation are not sufficient to overcome the presumption that counsel was effective. *Crain*, 2012 Ark. 412.

Appeal dismissed; motion moot.

*Brian Taylor Jordan*, pro se appellant.

No response.